All right, our second case for this morning is Board of Forensic Document Examiners against the American Bar Association and others. So Mr. Frank. Thank you, Your Honor. May it please the Court. Evan Frank for the appellants. There are two boards which certify forensic document examiners. These are people who do handwriting comparisons and look for other forms of forgery, usually as experts in a case in court. The smaller board is on the plaintiff's side. It's called the Board of Forensic Document Examiners, and there's only 12 examiners certified by it. The larger board is on the defense side. It's called the American Board of Forensic Document Examiners. So the names are the same except for the word American. And it has about 150 certified examiners. The article at issue in this case. Did you allege that, that there were only two certifying boards? We allege that there were two certified boards in the first amended complaint. Sorry, we allege that there were two, the word we use is accredited boards, in the first amended complaint. In the second amended complaint, which we sought leave to file, which was denied, we dropped the qualifier accredited to allege that there are two boards, period, whether accredited or otherwise. But the district court seems to think you placed undue emphasis on the word board. I mean, there are other organizations where people do this kind of thing, right? There are other membership organizations, but not other boards. And the difference is not just in the name. A board administers an exam and tests the applicant. Where does it say that? I mean, I can think of countless organizations that call themselves boards. And I don't know that administering examinations is necessarily part of it. I don't know where we've alleged that, but the existence of the other certifying bodies was brought in by the defense from outside the pleadings in response to our motion to dismiss. Well, it was in the article. The reference to bodies, certifying bodies, was in the article. But the article also says that the American board is the only accredited board, beware of other words. Well, with certain features. I mean, it's actually, it never mentions the Board of Forensic Document Examiners by name. Correct. It mentions the American Board of Forensic Document Examiners. Well, I would appreciate it if you would talk a little about the constitutional standard under the First Amendment for the treatment of statements of opinion, because this does seem very much to be Mr. Vastrick's opinion about who judges ought to listen to. That's the gist of the article. I can assure you that judges don't always take such articles as commands or gospel. It's opinion. He thinks that he likes his board. He doesn't mention that he's a member of this board, but he says nice things about the American board. Well, to begin with, not all of the statements are qualified with opinion language, like I believe, I think, et cetera. Do you have to have that when the front of the journal says the opinions here are personal and when a sensible reading of these things using the word appropriate or using the word better or not so good, surely those are, they're not falsifiable, right? I mean, what's a fact, we can get into an epistemological discussion of this, but a fact is something that can be falsified. Well, even if you think something is phrased as an opinion, if it doesn't disclose the facts, then the reader can assume that the author actually has those facts and chose not to disclose them. If you- Can you give me an example of a sentence because I'm not sure about that. I mean, if I say, in my opinion, the board of forensic document examiners is the best source to go to. I mean, if you're an American board person, you might not agree with me, but it's not falsifiable or if I just, without saying in my opinion, if I said the board of forensic document examiners is the best place to go, that's an opinion. The issue is that the article does not just say the American board is the best, it says be wary of others. Right, but we've said, actually we had some dramatic language in an opinion sometime back saying that you could say all sorts of negative things. Scab, traitor, amoral, scam, fake, phony, snake oil job, he's dealing with half a deck, lazy, stupid, crap shooting, chicken stealing, idiot, and we called all of those things opinion. And we didn't say anything like, or the author said nothing nearly that bad about your organization. I think the context of this article is important because if you look at the beginning article, the beginning of the article, it talks about the two competing standards for whether experts are admissible, cites the Federal Rule of Evidence 702, and then goes through to say... Meaning that the article represents the opinions of the author. Yes, but having a disclaimer like that doesn't say that if it nonetheless alleges something... Sreenan, I have a, the concern that I have is very similar to the one that you're hearing from my colleagues. I mean, all of this also appears in a section of the article that says gatekeeping tips from a practitioner. So, I think when I read it, the fair import of it is, what's his name, Mr. Vlasic, Bastrick, just saying, you know, look, based upon my experience in working in this space, here's some guidance that I offer to judges for what it's worth. So gatekeeping is, of course, an allusion to the judge's role in deciding which experts get in and which don't. Right, right. I think the reason that's important and the reason why that helps our case is the import of what Mr. Bastrick is saying is not just the ABFDE is the only board recognized and, you know, others are not. It's saying to the audience, who includes lawyers, if you're thinking about hiring an expert, you better use the ABFDE because we're the only one recognized. Yeah, but when you add those words, we're the only ones recognized, that's what's not here. It says that the ABFDE is the only board recognized by the forensic community, law enforcement, the courts, the legal community, etc. That's one of the statements that we're challenging. So I'm not sure it goes quite that far. So when you say that to an audience that includes lawyers who are potentially thinking about hiring an expert, it has a loaded meaning because, remember the beginning of the article, it says that this is going to be talking about which experts get admitted and which don't. Saying that only one board is recognized or is not carries the added weight of... It's not just recognized, though. What it says is the only certification board recognized by the broader forensic science community, then a whole slew of people, law enforcement and courts, for maintaining principles and training requirements concurrent with the published training standards. Be wary of other certifying bodies. So clearly there are other certifying bodies. He's sort of saying that everybody thinks the American board is the best one. It doesn't just say that the American board is the best one, he puts down others because he says be wary. For maintaining principles and training requirements concurrent with the published training standards. But then he says be wary of other certifying bodies. But that's surely an opinion. Be wary of is a way of saying you probably don't want to use other certifying bodies or look at them with skepticism or something like that. How can you create a falsifiable statement of fact out of that? Well, even if it's an opinion, it's still actionable if he doesn't disclose the facts underlying his opinion. Where do you get that from? From the restatement. But under the First Amendment, statements of opinion are protected. They're not subject to the law of libel. And I don't know where, particularly if you're in a libel per se context, which you seem to be in, as I'm understanding you, there's an obligation to boil down your statements of opinion and list which underlying facts you're relying on for those opinions. I'm completely unfamiliar with that. Well, the issue in defamation per se is there are seven state substantive laws that apply here because of the choice of law issue. But isn't it really just two? You didn't argue anything but Illinois law, with the exception of the one man from New York, and the judge applies New York law to that man, of and concerning, actually. What this court said in Jarikwi is to preserve a choice of law issue for appeal, the party need only notify the district court in a timely manner of the applicability of another state's law. But you didn't follow it up with anything. I mean, you cite Illinois cases. You don't, I'm not sure that Judge Chang would have had any reason to believe that you were asserting that there was a significant difference between the law of Illinois and one of these other states, and why you thought the result would be different. Well, Judge Chang agreed that the other state's law did in fact apply, and what he said was Just New York. He didn't say the other five states, California, Texas, Ohio, North Carolina applied. He did say that, and what he said was he's applying the Illinois cases because in his mind there was no conflict between the different states. And that's where you had to jump in and say, oh, sorry, Your Honor, we think the law of California is in fact materially different. Here are some California cases. You didn't. But it may not be the best practices, but we did not have to because under JARAQUI, our only obligation to preserve a choice of law issue for appeal was to notify a district court in a timely manner. But how do you put the court on notice if you don't follow up? If you're citing Illinois law, if you're not articulating why you think there are differences, how do you put the court on notice? Well, in the case Cusel, which is what this court, from the Fifth Circuit, which this court relied on when it said that line in JARAQUI, that's exactly what happened. A party at some point earlier in the case for another issue said, I think this state law applies. Then later on in post-trial motions, the other side cited the forum law, and the appealing the Fifth Circuit said, okay, you've done what you have to do because earlier in the case, even on a different issue, you notify the court that another state law applies. That's particularly difficult in a jurisdiction that follows de paysage because just because one law applies on one issue, a different law may apply on a different issue. Well, that was the case in JARAQUI as well, or there was a peculiar issue about Texas choice of law where one of the things that the party neglected to mention to the district court was that it had to conduct an independent analysis for each plaintiff, and still this court held that choice of law was preserved. Okay. Well, if you want to preserve a little rebuttal time- I will. Thank you. I would suggest that. Thank you. Mr. Mandel. Good morning, Your Honors. Steve Mandel on behalf of the American Bar Association, Tom Vastrick, Judge Stephanie Dimitrovic, and the American Board of Forensic Document Examiners. Judge Chang did an exhaustive review of the opinion issue. He looked at the context of the journal issue as a whole. He looked at the context of the article as a whole, and he examined the specific language and the signals within the article. I don't think that the plaintiffs really challenged the notion, the legal principles involved, the Holman factors, sometimes called the totality of circumstances test to determine whether or not something's opinion. They really just don't apply it. They don't look at context. They don't look at the language. And I think here, where, first of all, the issue as a whole, nearly every article there, someone's offering some sort of theory or conjecture. In this judge's journal, you mean? Right, Your Honor. And then in Mr. Vastrick, too, in his article, he says, I, as a practicing forensic document examiner, would like to respectfully suggest ways to differentiate between the true professional and the lesser qualified. Now, he never reveals at that spot that he, in fact, is a member of the American Board, does he? That's true, Your Honor. It's a little sketchy. But he begins his article really addressing the history of forensic document examination, and then he goes into the Daubert factors and how this forensic science complies with that. And it's really only at the end of his article that he then delves into offering suggestions to judges on how to qualify experts. These are these four statements? I take it everybody, you've set them out, pages two and three of your brief. Right, Your Honor. Everyone agrees that's the nub of this case? Right. And I think if you look at the statements, they're filled with those types of signal words that indicate that he's expressing his opinion, an appropriately trained forensic document. What if he said, a forensic document examiner, what if he said, no other program in the United States insists on the 24 months, either consecutive or over a period of time? That would be wrong, right? That's falsifiable, because the plaintiffs do have 24 months of training. It's just spread over four years rather than two years. Right, Your Honor. I mean, the language does have an equivalency aspect to it that he did not specifically call out. But that wasn't his point. The standard is a minimum standard, and in his view, the best training is somebody who's doing 24 months full-time. What if he had said, number one, an appropriately trained forensic document examiner will have completed a full-time in-residence training program as required by, I forget the name of the certifying agency, but the certifying agency. It's not required, right? The standard would allow either the two-year or the four-year. Correct, Your Honor. The standard contemplates that people can satisfy an equivalent part-time training within four years. And would you agree that it might be a problem if he said there was no equivalence possibility? Possibly, Your Honor, but of course that doesn't address the of and concerning problem here, which it makes no reference to either the Board of Forensic Document Examiners or any individual. It comes close where it says it's the only certification board recognized by the broader community and so forth. Since I take it the broader community realizes that the Plaintiff Board, the Board of Forensic Document Examination does exist. Right. So are they the only, when you say they're the only one, is that a misstatement of fact? Actually it says it's the only one recognized by a list of people in this community and I think it's interesting if you read their complaint, they say that most people in the most document examiners who come out of the ABFDE were trained in government positions. So it's not surprising that people who are in law enforcement might have a higher regard because they're familiar with those people than people who say come out of a private training program. The other thing to note is that actually it's not true. There are other boards that certify, in fact the Plaintiff, Emily Will, and we cited this in our motion to dismiss, if you look at her webpage there's a link to the National Association of Document Examiners. Is it a board as opposed to a body? Is there something in the title that says board? That seems to be the distinction here. I think you're right, but it's in a national association, right? But if you go to their website and you click on certification, it's clear that their board issues the certification. So there are criteria that a person has to meet in order to be part of this national, whatever they are? Yes, Your Honor. But I think the point is here that in the larger context of his article, he was making clear that there are other certifying bodies out there. There's universities in name only, there's graphological societies, what have you. He happened to use the word board, small B, but it wasn't, I think it can be innocently construed in a way to be of and concerning a much larger group. And certainly in the context of the article, it's not reasonable to say, oh, you're just a forensic document. How do you respond to Mr. Frank's point about Andrew Solner and how Andrew Solner is really, if we apply New York law and we look at that, what is this, the Rolling Stone case, that Mr. Solner is really the only individual that possibly fits within the two criteria here? Yeah. The problem is that, respectfully, Mr. Solner contorts the actual language of the statement. The actual language of the statement is... I've got to hear, you're talking about the member of the question document examiner? Right. The member of the American Academy of Forensic Sciences, but not the question document section. Okay? That's the statement. There are 7,000 members of the American Academy of Forensic Sciences. That's in their complaint. So just by saying that... So Mr. Vastrick's statement could refer to a whole slew of people. And if you go to the American Academy's website, there are... How many sections are there? There's like 10 sections, but among them are the criminalistic section, the jurisprudence section, the general section. And so it's feasible that somebody who's in the American Academy of Forensic Sciences could come and say, oh, I'll be your forensic document examiner expert. But Vastrick's point is, wait, you want to look for someone who's in the question document section because that's the focus of the work they do, and not just because they're a member of the American Academy. But is Mr. Solner the only one who is a member of the American Academy of Forensic Sciences and also not in the question document section? No. That's not true. And in fact, that's why he says, I'm the only forensic document examiner who's a member of the academy, but not in the question document section. So I think you have to focus on the statement at hand and not the statement that evolves or emanates from plaintiff's interpretation of what they want the statement to mean. Choice of law, I think your honors have touched on that. True the judge said that you look to the domicile of each of the plaintiffs, but that's only half the analysis. Then you have to evaluate whether there's a conflict. And under De Passage, the only conflict was on this issue of whether or not you could offer extrinsic evidence. To your point, the question on the Rolling Stone case, I don't think this is a small group libel situation. Usually a small group libel situation involves when you mention the group, like the jury was bribed. There's no mention of the BFDE here. And as Mr. Vastrick's article makes clear, there is a large number of practitioners who are lacking in training. So it wasn't focused to just the 12 members of the BFDE. So do we need to, there's some discussion in the briefs about whose knowledge and whose association we're thinking about. Do we need to look at people who knew Mr. Solner? Do we need to look at people who know about the organization? What's the right focus? Maybe people know Mr. Solner happens, for whatever odd reason, to be the only forensic document examiner who's not in that section. Well I think the standard is a tough one under that Three Amigos case out of New York. There has to be only reasonable conclusion that refers to Mr. Solner. And I think Judge Chang appropriately said, wait a second, you've got almost a daisy chain of information that someone would have to ferret out, that you could only be in one section and that Mr. Solner's in this one and not that one. And so I think that- But didn't Judge Chang look at it from the average reader's knowledge, as opposed to someone who would know Mr. Solner? I think so, and I think appropriately so. Under New York law, is that the appropriate standard? Yes. Yes, Your Honor. And then lastly, and this is somewhat of an obscure point, but on the small group libel cases, the plaintiffs are really a subset of the group contemplated by the defamatory statement, because there are some members of the BFDE who satisfy the two-year training period. So by saying somehow that people who have to rely on the equivalency are incompetent or not as good, it's not necessarily referring to the group, the Board of Forensic Document Examiners, because there are members in there who do satisfy the 24-month full-time training period. Well, if there are any other questions- I see none. So thank you very much. Thank you. Mr. Frank, you can wrap up. The first point I'll make is that for Mr. Solner, under New York law, the standard is in fact people who know the plaintiff. So you can assume, you don't have to go through this analysis of whether some imaginary reasonable reader would be able to figure out that he's a person meant. The standard is a person who knew him. How well do you have to know him? I mean, suppose you go to the same church as he does, and you might not really know the differences among these various boards and sections. Well, if you compare it to the Rolling Stone case where the Second Circuit applied New York law, one of the examples where the lead plaintiff, Elias, overcame this problem was he said, people who know me, a subset of people who know me, who had been to my fraternity house when I lived there, knew that based on the description of the article and where the people travel, and they go up a flight of stairs, and happened to know that there was a keypad lock on a door, so my room was the only one accessible. That subset of people were able to figure out that it was me. The Second Circuit applying New York law held that that was sufficient. He got over the finish line. So I would also say that under Brady v. Ottaway, if there's some reasonable construction where people might think it's him, and on the other hand, a reasonable construction where people think it's not him, it's innocent, then the plaintiff gets a trial, at least under New York law, and the case that says that is Brady v. Ottaway. The last thing I would say is on opinion, which is it's important to recognize that the audience here is judges and lawyers, and based on the context, people who are scrutinizing experts. So when you emphasize that, oh, the training standard requires, may I briefly finish my point? Please. It has to be two years residency, and you leave out the fact that the equivalent over four years is okay. Again, the audience is scrutinizing, possibly thinking about filing a Daubert motion, ruling on a Daubert motion, or hiring an expert, and may be scared of being left without an That's all I have. Thank you. All right. Thank you very much. Thanks to both council. We'll take the case under advisement.